**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**LONNIE LEE HAMILTON,**
as Administrator of the Estate
of Lonnie Lamont Hamilton,

                **Plaintiff,**

                v.

**JOSEPH MEAD et al.,**

                **Defendants.**

**9:19-cv-257
(GLS/ATB)**

_____

**APPEARANCES:**        **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Office of Richard L. Giampa     RICHARD L. GIAMPA, ESQ.
860 Grand Concourse
Suite 1H
Bronx, NY 10451

**FOR THE DEFENDANTS:**
Hon. Letitia James     BRENDA T. BADDAM
New York State Attorney General     C. HARRIS DAGUE
The Capitol     Assistant Attorneys General
Albany, NY 12224

**Gary L. Sharpe
Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Lonnie Lee Hamilton (hereinafter "plaintiff"), as administrator

of the estate of Lonnie Lamont Hamilton (hereinafter "Hamilton"), commenced this civil rights action against defendants Joseph Mead and Alfred Zeina in the New York State Supreme Court, Bronx County. (Compl., Dkt. No. 1, Attach. 1.) Defendants subsequently removed the action to the United States District Court for the Southern District of New York on the basis of federal question jurisdiction. (Dkt. No. 1.) Shortly thereafter, defendants filed a motion to change venue, which was granted, and the action was transferred to this District. (Dkt. Nos. 13, 27.) Now pending is defendants' motion for partial summary judgment. (Dkt. No. 48.) For the reasons that follow, the motion is denied.

## II. **Background**[1]

Hamilton was an inmate incarcerated at Marcy Correctional Facility (hereinafter "Marcy C.F."), where he was serving an indeterminate sentence of two-to-six years for robbery. (Defs.' Statement of Material

---

[1] Plaintiff's opposition to defendants' motion fails to comply with Local Rule 56.1. (*See generally* Dkt. No. 51.) According to the Local Rules of this District, the party opposing a summary judgment motion must file a separate response to the statement of material facts, and that response "shall mirror the movant's [s]tatement of [m]aterial [f]acts by admitting and/or denying each of the movant's assertions in a short and concise statement, in matching numbered paragraphs." N.D.N.Y. L.R. 56.1(b). If the opposing party fails to do so, as plaintiff did here, "[t]he [c]ourt may deem admitted any properly supported facts set forth in the [s]tatement of [m]aterial [f]acts that the opposing party does not specifically controvert." *Id.* Accordingly, the court deems admitted defendants' statement of material facts, which are properly supported and unopposed.

Facts (SMF) ¶¶ 1-2, Dkt. No. 48, Attach. 1.)  Hamilton, who had previously stated that he wanted to "hurt himself," was considered an Office of Mental Health (OMH) Level 2 inmate, "which describes an individual who needs or may need psychiatric treatment for a major mental disorder and requires housing in a facility with full time OMH staff."[2]  (Dkt. No. 51 at 4.)  On March 15, 2016, he was found "attempting to tie a sheet around his neck," and was placed on "1:1 watch by OMH staff."  (*Id.*)  However, Hamilton was removed from that watch the next day, and his prescriptions for Prozac and Haldol were discontinued.  (*Id.*)

On March 18, 2016, at approximately 11:24 A.M., while Mead was conducting an "observational round" of Marcy C.F.'s Special Housing Unit (SHU), Mead observed Hamilton "hanging from a ceiling grate by a ligature made from a bed sheet tied around his neck."  (Defs.' SMF ¶¶ 3-5.)  One of Hamilton's legs was touching the bed, "causing [d]efendants uncertainty as

---

[2]  Notably, plaintiff's counsel has violated the Local Rules by filing an attorney affidavit replete with legal arguments, in which he also includes his statement of additional facts rather than as a separate document.  (*See generally* Dkt. No. 51); N.D.N.Y. L.R. 7.1(b)(2) ("An affidavit must not contain legal arguments but must contain factual and procedural background that is relevant to the motion the affidavit supports.").  Ordinarily, the affidavit would not be considered.  *See* N.D.N.Y. L.R. 7.1(a)(3); *Bruno v. City of Schenectady*, No. 12-CV-0285, 2014 WL 2707962, at *3 (N.D.N.Y. June 16, 2014) ("[B]riefadavits . . . are impermissible in this District." (internal quotation marks and citations omitted)).  However, here, the court considered it out of solicitude to plaintiff and in the interest of judicial economy.  Additionally, as defendants chose not to file a reply in further support of their motion for partial summary judgment, the additional facts proffered by plaintiff are unopposed.

to whether [he] was faking a suicide attempt." (*Id.* ¶ 7.) Mead notified Zeina, who instructed the SHU "bubble officer" to contact a supervisor, Sergeant Keith Marshall. (*Id.* ¶¶ 6, 8-9.) Marshall arrived a few minutes later, at which time, he, along with Mead and Zeina, entered Hamilton's cell and cut the ligature down. (*Id.* ¶¶ 9-11.) A call for medical emergency response was made at the same time. (*Id.* ¶ 12.)

Marshall and Mead started CPR at approximately 11:29 A.M. while Zeina retrieved the AED and "Ambu bag," and Marcy C.F. nurses arrived four minutes later to assist. (*Id.* ¶¶ 13, 15-16.) External EMS was called for further assistance shortly thereafter. (*Id.* ¶ 17.) Hamilton was declared dead approximately one hour after Mead found him. (Dkt. No. 51 at 4.)

According to plaintiff, the following testimony was gleaned from a subsequent investigation: (1) inmates housed near Hamilton testified that defendants had a "personal vendetta" against Hamilton and denied him recreation time and lunch on the day of his suicide; (2) the same inmates testified that Hamilton was heard "complaining about not receiving recreation and lunch as well as threatening several times to hang himself if he does not get food"; (3) an inmate testified that he heard an officer respond to Hamilton's complaints by yelling "aren't you supposed to be

4

killing yourself"; and (4) a different inmate testified that, in response to Hamilton's complaints, defendants made additional negative comments such as "save [your] breath," "you don't need food, you're going to be dead anyway," "you should just kill yourself," and "do us a favor and kill yourself." (*Id.* at 5.)

The investigation also resulted in testimony from certain inmates that, when Mead saw Hamilton standing on his bed at 11:00 A.M., defendants said "he is trying to kill himself," but they did not check on him again until "some twenty minutes later." (*Id.* at 6.) According to an inmate, Mead told Zeina not to call for help because "it's going to be a lot of paper work." (*Id.*) Plaintiff asserts that Hamilton's cell door was opened for at least twenty-eight minutes after Mead first observed Hamilton standing on his bed, and several minutes after he observed Hamilton hanging before he was provided medical care. (*Id.*)

Plaintiff commenced this action on October 23, 2018, alleging an Eighth Amendment deliberate indifference to medical needs claim and a First Amendment claim, pursuant to 42 U.S.C. § 1983. (Compl. ¶¶ 32-56.) Defendants now move for partial summary judgment, asserting that plaintiff's Eighth Amendment claim should be dismissed. (Dkt. No. 48.)

5

## III. Discussion

Defendants contend that plaintiff's Eighth Amendment claim should be dismissed on the merits, or, in the alternative, based on the doctrine of qualified immunity. (*See generally* Dkt. No. 48, Attach. 2.)

### A. Deliberate Indifference

Under the Eighth Amendment, a claim of deliberate indifference to serious medical needs has two requirements. *See Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013). "The first requirement is . . . [that] the alleged deprivation of adequate medical care must be sufficiently serious." *Id.* (internal quotation marks and citation omitted). "The second requirement is . . . [that] the [defendants] must be subjectively reckless in their denial of medical care." *Id.* (citation omitted). Thus, the deliberate indifference standard has both objective and subjective components. *See id.*

"The objective component requires that the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (internal quotation marks and citation omitted). In situations where medical attention is given, but is

6

alleged to be objectively inadequate, "the seriousness inquiry focuses on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone." *Davis v. Parker*, No. 9:16-CV-1474, 2020 WL 5848779, at * 6 (N.D.N.Y. Oct. 1, 2020) (internal quotation marks, alteration, and citation omitted).  In these cases, "the relevant time period begins when a defendant becomes aware of facts from which he could, and does, infer that a substantial risk of serious harm exists." *Id.* (citation omitted).

The subjective component requires a plaintiff to demonstrate "that the defendant acted with the requisite culpable mental state similar to that of criminal recklessness."  *Shabazz v. Howard*, No. 9:12-CV-1372, 2015 WL 5604662, at *4 (N.D.N.Y. Sept. 23, 2015) (citations omitted); *see also Lawrence v. Evans*, 669 F. App'x 27, 28 (2d Cir. 2016) ("To satisfy the subjective component, a plaintiff must establish the equivalent of criminal recklessness, i.e., that the charged official act[ed] or fail[ed] to act while actually aware of a substantial risk that serious inmate harm will result." (internal quotation marks and citation omitted)).  In this regard, "[a] plaintiff must demonstrate that a defendant acted with reckless disregard to a known risk of substantial harm."  *Shabazz*, 2015 WL 5604662, at *4

7

(citation omitted).

Defendants concede for purposes of their motion that the objective component of plaintiff's deliberate indifference claim is satisfied, as suicide and "a history of depression and suicide attempts" constitute a sufficiently serious medical condition. (Dkt. No. 48, Attach. 2 at 7 (citation omitted).) However, they contend that the complaint does not satisfy the subjective component because they "acted immediately upon discovering [Hamilton] to obtain supervisory assistance," and, thus, "acted constitutionally." (*Id.*) In response, plaintiff contends that correction officers, like defendants, have a duty to administer life-saving care and are forbidden from waiting for medical staff to arrive before initiating that care. (Dkt. No. 51 at 8-9.) Plaintiff also notes that "it is important to consider the events leading to plaintiff committing suicide," which are unaddressed by defendants. (*Id.* at 4.)

Notably, in his complaint, plaintiff supports his Eighth Amendment claim with many allegations that take place prior to Hamilton's suicide, including that Hamilton had previously attempted suicide and was threatening to do so again, and that, to "punish" him for the "trouble" this caused defendants, they "denied [him] food and recreation time and

8

goaded and encouraged [him] to commit suicide." (Compl. ¶ 20.) Indeed, plaintiff alleges that defendants "sprayed [Hamilton] with a fire extinguisher" and "blasted the air conditioning to freeze him and prevent him from talking with other inmates through the vents." (*Id.* ¶¶ 22, 24.) And, upon Hamilton's request for food, defendants said, "I thought you're going to kill yourself," "you should just kill yourself," "you don't need food, you're going to be dead anyway," and "do us a favor and kill yourself." (*Id.* ¶ 23.) Plaintiff also alleges that Hamilton was left unattended from 11:00 A.M. to 11:24 A.M. despite the fact that he was threatening suicide and had a history of suicidal ideation. (*Id.* ¶¶ 16-17, 29-30.)

    Despite all of these allegations, defendants do not mention any facts in support of the pending motion other than those that took place from the moment they found Hamilton hanging in his cell to the moment he was declared deceased. (*See generally* Dkt. No. 48.) Indeed, they expressly state that, in their view, those facts are all that is necessary to resolve the pending motion. (*Id.*, Attach. 2 at 4.) But it is clear from a review of plaintiff's counsel's opposition affidavit, (*See generally* Dkt. No. 51), that more facts exist that are crucial to determining whether plaintiff has satisfied the subjective component of his Eighth Amendment claim. That is

9

to say, it may or may not be true that defendants acted constitutionally upon finding Hamilton hanging from the ceiling grate, but the additional facts that could establish plaintiff's Eighth Amendment claim are simply unaddressed by them.

Accordingly, there is an issue of fact with respect to whether defendants were reckless as to a known risk of substantial harm, *see Lawrence*, 669 F. App'x at 28; *Shabazz*, 2015 WL 5604662, at *4, and, thus, whether defendants acted, or failed to act, with the requisite subjective intent.  On the one hand, defendants have set forth supported and unopposed facts to show that defendants did not immediately render aid because they thought Hamilton could be faking his suicide attempt and wanted to wait for a supervisor, (Def.'s SMF ¶¶ 7-8), which they argue was reasonable and not reckless, (Dkt. No. 48, Attach. 2 at 6-11).  On the other hand, plaintiff has set forth unopposed facts to show that defendants acted with recklessness in that they were aware of a substantial risk of suicide, and, instead of addressing that concern, they refused him food, mocked him and encouraged him to commit suicide, and left him unattended for more than twenty minutes after seeing him standing on his bed and threatening suicide.  (Dkt. No. 51 at 5-6.)

10

Accordingly, there is a genuine issue as to a material fact with respect to this aspect of plaintiff's claim, and defendants' motion for partial summary judgment is denied. *See Zimmerman v. Pautz*, No. 12-CV-00763A, 2020 U.S. Dist. LEXIS 97763, at *49 (W.D.N.Y. Jun. 2, 2020) (denying summary judgment and finding that the unopposed fact "that Plaintiff not only was threatening to take his own life, but also had the means to do so, raises an issue of fact as to whether [defendant]'s asserted response, *i.e.*, alerting prison staff to Plaintiff's condition and requesting additional rounds to check on Plaintiff, was sufficient" (citation omitted)); *Barrett v. Livingston County*, No. 14-CV-6593, 2019 WL 1083027, at *11 (W.D.N.Y. Mar. 7, 2019) (denying summary judgment and finding that "a reasonable jury could find that [the defendant] acted with deliberate indifference," where there was evidence that the defendant "knew there was an acute risk that [the plaintiff] would attempt suicide," and "took no action in response")*; Engles v. Jones*, No. 6:13-cv-6461, 2018 WL 6832085, at *6 (W.D.N.Y. Dec. 28, 2018) (finding that a genuine issue of material fact existed where inmate threatened suicide and correctional officer took no action).

**B.     Qualified Immunity**

11

Qualified immunity shields government employees from liability under Section 1983 in two circumstances: "(1) their conduct did not violate clearly established rights of which a reasonable person would have known, or (2) it was objectively reasonable to believe that their acts did not violate these clearly established rights." *Cornejo v. Bell*, 592 F.3d 121, 128 (2d Cir. 2010) (internal quotation marks, alteration, and citations omitted). "A right is clearly established when the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Jackler v. Byrne*, 658 F.3d 225, 242 (2d Cir. 2011) (internal quotation marks, alterations, and citation omitted).

Qualified immunity attaches if "officers of reasonable competence could disagree on the legality of the action at issue in its particular factual context." *Dancy v. McGinley*, 843 F.3d 93, 106 (2d Cir. 2016) (internal quotation marks and citation omitted). In essence, the doctrine of qualified immunity provides protection to "all but the plainly incompetent or those who knowingly violate the law." *Id.* (citation omitted).

Defendants argue that they are entitled to qualified immunity because there exists "a profound lack of clarity" in the case law as to whether there is "a constitutional obligation for a law enforcement official to

12

perform CPR before the imminent arrival of medical personnel." (Dkt. No. 48, Attach. 2 at 11-12.) In response, plaintiff argues that qualified immunity does not apply here because Second Circuit case law "was well established 'that prison officials have a duty to administer life-saving care even in the absence of a pulse or respiration where circumstances indicate the possibility of a very recent death and the individuals are available to give such care." (Dkt. No. 51 at 3 (citation omitted).)

The doctrine of qualified immunity does not bar plaintiff's Eighth Amendment claim because, as explained above, there are unaddressed issues of fact with respect to events that took place before Hamilton was found hanging from the ceiling grate. As such, it is unclear whether defendants were not "plainly incompetent" or did not "knowingly violate the law" in their actions and inactions. *See Dancy*, 843 F.3d at 106.

### IV. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendants' motion for partial summary judgment (Dkt. No. 48) is **DENIED**; and it is further

**ORDERED** that this case is now deemed trial ready and a trial scheduling order will be issued in due course; and it is further

13

**ORDERED** that the clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

September 7, 2021
Albany, New York

*Gary L. Sharpe*
Gary L. Sharpe
U.S. District Judge